LATORRE (UNITED STATES v.). See Case No. 15,567.

## Case No. 8,115.

### LATSON v. STURM.

[2 Ben. 327.] [1]

District Court, E. D. New York. March, 1868.

CHARTER PARTY—REPRESENTATIONS AS TO VESSEL—OVERLOADING—DEVIATION.

1. Where a steamer was chartered in New York for a voyage to Tampico and back, the charterer to appoint all the officers except the master and chief engineer, and the vessel went to Tampico, and was there sent by the charterer up the Panuco river, where she received injury, and on her return the owner filed a libel against the charterer to recover a balance of charter money, and also damages for the injury received by her, and the charterer set up, as a defence, that the vessel was chartered on representations made by the owner which were untrue: Held, that on the facts the vessel was not chartered on representations, but on a full examination of her by the charterer.

2. The vessel was overloaded by the charterer.

3. The charterer was liable for the amount remaining due of the charter money, and also for injury received by her in going up the Panuco river, whither she was sent contrary to the charter.

This action was brought [by Norman L. Latson against Herman Strum] upon a charter party of the steamer General McCallum, for a voyage from the port of New York to Tampico and back. According to the charter, the charterer was to bear all the expenses of the vessel, including insurance, and appoint all the officers and crew, except the master and chief engineer, and pay $100 per day for the use of the vessel upon the voyage in question. The vessel was accepted by the charterer, loaded and dispatched upon the voyage, and in time returned, having, during the voyage, been sent by the charterer up the Panuco river, which was no part of the voyage contracted for in the charter party, and where she received some injury by touching the ground. The defence was that the vessel was not in the condition represented by her owner—that she could not make the speed which it was alleged she would—that she was unsound and unfit for the voyage in question, and, therefore, the charterer could procure little return cargo, and that at reduced freight, whereby the charterer sustained great damage; and, further, that the charterer had, in the charter, reserved an option to purchase the vessel at a fixed price, with the intention of selling her in Mexico; that this object was known to the shipowner, and the possibility of such a sale formed a principal inducement to the charter; that, by reason of the false representations of the ship-owner, as to the capacity of the vessel, and also by reason of her unsound and unfit condition, no sale of her could be effected by the charterer, and his option proved valueless, whereby the adventure resulted in the loss of a large sum, which the respondent claimed to recoup

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

against any sum unpaid upon the charter party.

Benedict & Benedict, for libellant.
Beebe, Donohue & Cook, for respondent.

BENEDICT, District Judge. Upon the proofs, as they stand, this case is, beyond any doubt, a clear one for the libellant. On the evidence, before me, the injury to the engine, and consequent delay of the vessel in executing the voyage, arose from the action of the respondent in overloading her—and it does not appear that any misrepresentations were made as to her condition or capacity. She was chartered only after an examination of her by the charterer and his agents, and upon that examination instead of upon representations. The balance of the charter money is, therefore, clearly due, and it is equally clear that the respondent is liable for any injury sustained by the vessel in going up the Panuco river, where the charterer had no right to take her, under the contract. That she went up the river, is admitted, and that she there received some injury, is proved. The loss occasioned by this deviation from the voyage contracted for must be borne by the charterer, and not by the shipowner. The libellant is also entitled to recover any sum paid by him upon drafts drawn by the master for stores, &c., at Galveston, Key West—all which expenses are, according to the charter, to be borne by the charterer.

Let a decree accordingly be entered in favor of libellant, with an order of reference to ascertain the amount.